EDITH M. WILLITS, APPELLEE, v. LEE C. WILLITS, APPELLANT.*

FILED MARCH 22, 1906. No. 14,180.

1. **Marriage Contract.** While our law defines marriage as a civil contract, it differs from all other contracts in its consequences. to the body politic, and for that reason in dealing with it or with the status resulting therefrom the state never stands indifferent, but is always a party whose interest must be taken into account.

2. **Marriage:** VALIDITY. A marriage, where one of the parties is under age of consent, but who is competent by the common law, is not

*See order as to attorney's fees, p. 235, *post.*

void, but merely voidable, and until annulled by a court of competent jurisdiction is valid for all civil purposes.

3. ————: ANNULMENT: SUPPORT OF OFFSPRING.' A court annulling a marriage at the suit of a husband who was under the age of consent when the marriage was solemnized may require him to pay a reasonable amount for the support and nurture of the issue of such marriage.

4. Suit Money: EXPENDITURES. In such case the court may also require the husband, if the circumstances of the party warrant it, to pay reasonable suit money to enable the wife to make a defense, and to reimburse her for expenditures on behalf of the family during the existence of the marriage relation.

5. Suit money may be allowed, in the sound discretion of the court, at any stage in the litigation and may be included in the final decree.

APPEAL from the district court for Harlan county: ED L. ADAMS, JUDGE. *Affirmed.*

*Flansburg & Williams, J. G. Thompson* and *Gomer Thomas,* for appellant.

*W. S. Morlan* and *R. L. Keester, contra.*

ALBERT, C.

The petition on which this cause was submitted is substantially as follows: That on the 15th day of November, 1903, the plaintiff and defendant were married in Harlan county, Nebraska, and immediately thereafter the defendant without just cause or excuse abandoned the plaintiff, and has ever since neglected to contribute any sum whatsoever for her support and maintenance; that on the 30th day of June, 1904, the plaintiff gave birth to a male child, the issue of the defendant, which is in her custody. That the plaintiff is in ill health, and without means of support for herself and the child, and without the necessary means of prosecuting the suit; that the defendant is the owner of a large amount of real and personal property, of about the value of $40,000, and that his income therefrom and his earnings amount to at least $5,000 a year.

The prayer is for a reasonable allowance for the support of herself and child, and for such other relief as may be deemed equitable.

The answer admits the marriage between the parties and the birth of the child. By way of a cross-bill the defendant alleges that on the evening of the marriage between himself and the plaintiff he called upon the plaintiff at her father's house, whereupon the plaintiff's father accused the defendant of being the father of the plaintiff's unborn child, and threatened him with bodily injury unless he, at once, contracted a marriage with the plaintiff; that the defendant, believing that he was in danger of death or great bodily injury, and influenced by such fears, was then and there induced to contract a marriage with the plaintiff; that immediately after the marriage ceremony was performed he left the plaintiff, and that they never cohabited together as husband and wife. The defendant further alleges that at the time the said marriage was contracted he was under the age of 18, being only 17 years, 4 months and 11 days old, and that the plaintiff was over the age of 18 years. The defendant's guardian, upon order of the court, was joined as a party defendant.

The court made no finding on the question of duress, and while it is quite clear from the evidence that the defendant in contracting the marriage was influenced somewhat by fears of a prosecution for bastardy, those fears were born rather of a consciousness of guilt than of any threats made by the plaintiff's father. In other words, we think the evidence justifies a finding that the defendant contracted the marriage in the hope of escaping a prosecution for bastardy, and not because of any fear of the plaintiff's father or other relatives. The court found, as was necessary in view of the evidence, that the defendant at the time of the marriage was under the age of 18 years, and entered a decree annulling the marriage, but requiring the defendant to pay plaintiff the sum of $150, which she had expended for lying-in expenses and for the support of the child up to the commencement of the suit, and that he

provide for the support of the child, as follows: $150 a year for the period of five years from the date. of the decree; the sum of $120 a year for the next five years, and the sum of $100 a year for the next four years, should the child live so long. The court further ordered that the defendant should pay the further sum of $100 as suit money for the benefit of the plaintiff's attorneys, and all costs. Defendant appeals.

The defendant takes the ground that, the court having found that he was under the age of 18 years when the marriage was solemnized, and entered a decree of annulment, the decree relates back to the date of the marriage, and places him in precisely the same position with respect to his liability to the plaintiff and for the support of the child that he would have occupied had the marriage never been contracted. In other words, his contention amounts to this, that by virtue of such finding and decree the plaintiff was never his wife, and the status of the issue of the marriage is merely that of an illegitimate child of the plaintiff and, consequently, he is required to provide for neither of them, either *pendente lite* or otherwise. This position seems to be untenable. While our law (Comp. St. 1905, sec. 1, ch. 52) defines marriage as a civil contract, it differs from all other contracts in its far reaching consequences to the body politic, and for that reason in dealing with it or the status resulting therefrom the state never stands indifferent, but is always a party whose interest must be taken into account. There can be no doubt that a decree of annulment leaves the parties in many respects as though the marriage had never taken place; in just what respects is not necessary to determine at this time. But a marriage, where one of the parties is under the age of consent, but who is competent by the common law, is not void, but merely voidable. Comp St. 1905, sec. 2, ch. 25. It is valid for all civil purposes, until annulled by a judicial decree. *State v. Lowell,* 78 Minn. 166, 79 Am. St. Rep. 358 (extended note) ; *Gathings v. Williams,* 5 Ired. (N. Car.) 487, 44 Am. Dec. 49, and notes.

We cannot overlook the fact that during the period of the recognized validity of such a marriage the rights of third parties—children who are the issue of what at the time was a lawful relation—frequently intervene, and that such rights would be prejudiced by placing the parties to the marriage contract in precisely the same position they would have occupied but for the marriage. There would be neither reason nor justice in a rule that would visit the consequences of a mutual indiscretion exclusively upon the wife. This case illustrates the iniquity of such a rule. The defendant is a young man of considerable fortune, and one whose age, judging from the evidence before us, cannot be accurately measured in years. The plaintiff is a young woman entirely without means of support. They are the parents of a child, born while the marriage was merely voidable. The plaintiff now addresses a prayer to the conscience of the court for an annulment of the marriage, a release from his liability for the support of his child, and incidentally, that the whole burden of its support and nurture be cast upon the shoulders of the plaintiff. Such a prayer does not appeal very strongly to the enlightened conscience of this age. It is in sharp conflict with the maxim, "He who seeks equity must do equity," as well as with sound public policy, which requires courts jealously to guard the rights of infants and take due precautions to prevent their becoming a public charge. It would seem that the law-makers foresaw such contingencies and undertook to provide against them by the enactment of section 15, ch. 25, Comp. St. 1905, which is as follows: "Upon pronouncing a sentence or decree of nullity of a marriage, and also upon decreeing a divorce, whether from the bonds of matrimony or from bed and board, the court may make such further decree as it shall deem just and proper, concerning the care, custody, and maintenance of the minor children of the parties, and may determine with which of the parents the children or any of them shall remain." The foregoing section is sufficient in itself, we think, to

Willits v. Willits.

justify a decree requiring the father of a child to provide for its support in cases of this character.

But the defendant contends that the allowance of $150 to the plaintiff for her own use and $100 for suit money is wholly unauthorized. So far as the suit money is concerned the defendant takes the position that, because the wife's suit was not brought for a divorce, but merely for maintenance, she is not entitled to suit money. Whatever the rule may be with regard to an allowance for suit money in an action brought merely for maintenance, it is well settled that in an action by the husband to annul a marriage the wife is entitled to alimony *pendente lite* and counsel fees, and the fact that the defendant proceeds by cross-petition instead of an original suit does not change the rule. See *Eliot v. Eliot,* 77 Wis. 634; *Wabberson v. Wabberson,* 57 N. Y. Supp. 405; *Higgins v. Sharp,* 164 N. Y. 4; *Allen v. Superior Court,* 133 Cal. 504; *Arey v. Arey,* 22 Wash. 261. It is intimated that the statute contemplates the allowance of alimony *pendente lite* before the final decree in the district court, and that a provision therefor in the final decree is erroneous. A different rule was announced in *Brasch v. Brasch,* 50 Neb. 73, where the court said:

"What sum a husband may be required to pay to his wife for her support during the pendency of a divorce suit, for her reasonable and necessary expenses in prosecuting or defending the action and for counsel fees and when such sums shall be paid—*i. e.,* whether before the final hearing of the action and as a condition precedent to the right of the husband to further prosecute or defend— are matters entirely within the discretion of the district court; and it is equally within the discretion of that court to postpone until the final hearing of the case the allowance, if any, made the wife for expenses and counsel fees in prosecuting or defending the action, and to render a judgment or decree against the husband at the time of disposing of the suit for such sum as appears to be reasonable and necessary; and the allowance made

by the district court for the temporary support of the wife or for expenses and attorney's fees will not be disturbed, unless it appears that the court has abused its discretion."

As to the allowance to the plaintiff of $150 for her own use it appears to have been made for the reason that she has incurred indebtedness to that amount "in the maintenance and support of the child and lying-in expenses." As before stated the marriage was valid until anulled by the court. Until it was annulled, therefore, the defendant was liable for the expenses of his family and the support and maintenance of his child. The expenses on which the court based the allowance of $150 were a part of the family expenses. In other words, the plaintiff had incurred indebtedness to the amount of $150 to defray expenses for which the defendant was liable. It does not seem at all unreasonable that the court in severing the relations between the parties should make provision whereby the defendent would be required to reimburse her or to relieve her from the burden of such indebtedness.

The plaintiff also complains of the decree because, as she insists, the allowance for the support of the child is insufficient and because of its omission to provide for permanent alimony. So far as the allowance for the support of the child is concerned, it is subject to revision from time to time (Comp. St. 1905, sec. 16, ch. 25), and we think, for the present, it should be permitted to stand. As to the claim for permanent alimony, such alimony is allowed in divorce proceedings in lieu of the common law right of support. *Greene v. Greene,* 49 Neb. 546, and citations. To support his wife is one of the obligations assumed by the husband by virtue of his marriage contract, and where, as in this case, the marriage is voidable, a release from such obligation is a part of the relief sought by the husband in a suit to annul the marriage. Permanent alimony is a statutory innovation, and we find no statutory authority for its allowance in a suit brought to annul a voidable marriage.

In our judgment the decree, in view of all the circumstances, is in no respect erroneous, and we recommend that it be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.

The following order was entered April 5, 1906:

ALBERT, C.

The motion made in this court for an allowance to the plaintiff for suit money was not called to our attention, either by brief or otherwise, and for that reason was not considered in the original opinion. Subsequently, our attention was called thereto and a further hearing had. We have no doubt that the plaintiff is entitled to a reasonable allowance for attorneys' fees for the services of her attorneys in this court, and are of the opinion that an allowance of $100 therefor would be reasonable.

It is therefore recommended that the plaintiff be allowed the sum of $100 as attorneys' fees for the services of her attorneys in this court and that the same be taxed as part of the costs in this court in favor of her attorneys.

JACKSON, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the plaintiff be allowed the sum of $100 as attorneys' fees for the services of her attorneys in this court, and that the same be taxed as part of the costs in this court in favor of her attorneys.