[No. 15566.   Department Two.   December 16, 1919.]

NETTIE MORGAN *et al., Appellants,* v. H. E. CUNNINGHAM
*et al., Respondents.*[1]

INFANTS (1)—EMANCIPATION—MARRIAGE.   A minor son is eman-
cipated by marriage with the consent of his parents, although it
does not remove civil disabilities.

HOMESTEAD (4)—HEAD OF FAMILY — MINOR SON—"MAINTAINED."
A widow is not entitled to claim a homestead, as having residing
with her a minor son under her care and "maintenance," within
Rem. Code, § 553, where the son had been emancipated by his
marriage and was himself the head of a family and was contrib-
uting to the support of the combined family rather than being
maintained by his mother.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered April 17, 1919,
upon granting a nonsuit, dismissing an action for
equitable relief, tried to the court.   Affirmed.

*Troy & Sturdevant,* for appellants.

*Thos. M. Vance,* for respondents.

BRIDGES, J.—The appellant claims a homestead in a
small tract of farm land in Thurston county, Wash-
ington, on the ground that she has living with her,
and under her care and maintenance, a minor son.   On
the other hand, the respondent contends that the minor
is not maintained by the appellant, and that, therefore,
the appellant does not bring herself within the pur-
view of the homestead laws of the state.   The trial
court held that appellant was not entitled to claim a
homestead.

Section 553, Rem. Code, with reference to home-
steads, defines ''head of the family'' as follows:

''The phrase 'head of the family' as used in this
chapter includes within its meaning,   .  .  .

[1]Reported in 186 Pac. 309.

"(2) Every person who has residing on the premises with him or her, and under his or her care and maintenance, either,—

"(1) His or her minor child or the minor child of his or her deceased wife or husband. . . ."

It will be noted that, in order that one may be the head of a family because of a minor child, that child must not only be residing with and under his care, but must be maintained by him. Maintenance is one of the necessary conditions.

The facts are substantially as follows: The appellant owns, as her separate property, the small tract of land above mentioned. She and her husband and their family lived on these premises for a number of years prior to the death of her husband, which was on May 3, 1917. She continued thereafter to reside at the same place. Charles W. Morgan is a minor son of the appellant and lived with her and his father prior to the latter's death, and with her most of the time since his father's death and until his marriage. On July 3, 1917, with the consent of his mother, he was married, and thereafter most of the time he and his wife lived at the home of and with the appellant. On October 27, 1917, appellant filed her claim of homestead. A short time previous thereto, the respondent Cunningham had obtained a personal judgment against the appellant. He sought to enforce this judgment, and levied upon and threatened to sell the property claimed as a homestead. Both before and after Mr. Morgan's death, his minor son, Charles, was in the habit of going out to work. He was employed at one place for several weeks, and at another place 'for several months, and at still a third place for a considerable length of time. When working for wages, as he did most of the time when away from home, he received the usual wages paid to his co-workers. After

his father's death, he secured his own employment, made his own terms, generally without consulting his mother, and collected his own wages. When he was not at work elsewhere, he worked about the home premises. Whether working on his mother's land or elsewhere, he considered his mother's home as his own and that of his wife, but generally, when working away from home, he lived temporarily at the place he was working. When working away from home, he took provisions from his mother's place for the use of himself and his wife. At the time this suit was tried, a child had been born to them. He and his mother kept what they termed a "family pocketbook," and whatever he earned over and above his incidental expenses was generally put into this family pocketbook. They all lived as one family and, as one family, paid the bills, combining their efforts and income to that end.

The courts have almost unanimously held that, where a minor son is married with the consent of his parents, he thereby becomes emancipated. Thereafter he is the head of a family and controls his own time and affairs, and his parents have no right to require his services or to demand any of his earnings. In the case of *Commonwealth v. Graham*, 157 Mass. 73, 31 N. E. 706, 34 Am. St. 255, 16 L. R. A. 578, the court said:

"It seems to be settled that the marriage of a minor son with the consent of his father, works an emancipation. . . . It has been said: 'The husband becomes the head of a new family. His new relations to his wife and children create obligations and duties which require him to be the master of himself, his time, labor, earnings and conduct.' . . . The meaning of emancipation is not that all of the disabilities of infancy are removed, but that the infant is freed

from parental control, and has a right to his own earnings."

To the same effect, see the following cases: *Cochran v. Cochran,* 196 N. Y. 86, 89 N. E. 470, 24 L. R. A. (N. S.) 160; *State ex rel. Scott v. Lowell,* 78 Minn. 166, 80 N. W. 877, 79 Am. St. 358; *Jackson v. Banister,* 47 Tex. Civ. App. 317, 105 S. W. 66; *Holland v. Beard,* 59 Miss. 161, 42 Am. Rep. 360.

Sections 8743 and 8744, Rem. Code, provide that a male shall arrive at lawful age at twenty-one years, and a female at eighteen years, but the marriage of a female under eighteen years to one who is of full age has the effect of making such female of full and lawful age. The statute does not, however, make a male minor of lawful age because of marriage. We therefore agree with the appellants' contention that the marriage of Charles Morgan did not make him of lawful age, nor did it remove the civil disabilities imposed upon him as a minor. See cases above cited. But such marriage did have the effect of emancipating him and making him the head of a family. He thereafter became his own man. He was bound to use his income and wages, not for the support of his mother, but for the support of his own family. It is conceded by counsel on both sides of this case that there are very few decisions which lend much light to this case, because the homestead statutes of the various states are very different from our own. As a rule, the statutes of the other states entitle one who is merely the head of a family, or who has a family living with him, to claim a homestead, and those statutes as a rule do not define, as does our statute, who shall be considered the head of the family. Nor, under most of the state statutes, is it necessary that any person be dependent upon or maintained by the head of the family, as is required by our statute. For these rea-

sons, most of the cases cited by the appellant are not in point. In the case of *Tyson v. Reynolds,* 52 Iowa 431, 3 N. W. 469, the facts were that the widower, who was claiming the homestead, had living with him his son and his son's wife, and the court held that he was the head of a family and entitled to claim a homestead. The court said:

"A family is 'the collective body of persons who live in one house, under one head or manager.' The relation existing between such persons must be of a permanent and domestic character, not abiding together temporarily as strangers. There need not, of necessity, be dependence or obligation growing out of the relation."

It will be noticed that, under the Iowa statute, it was not necessary that the son and his wife should be dependent upon, or maintained by, the homestead claimant.

Homestead statutes, because of their nature and purpose and the result sought to be obtained, should be liberally construed. Consequently, when the statute requires that the minor shall be maintained by the head of the family, it does not mean a complete dependence of the minor; it is sufficient if the child is materially. or substantially maintained. But in instances where the child is emancipated and supports its parent more than it is by the parent supported, it cannot be said the parent maintains the child within the purview of our homestead act. So in this case, when all of the facts are taken into consideration, we are forced to the conclusion that Charles Morgan, the minor child, was not maintained by the appellant, but, on the contrary, he voluntarily contributed to her support; that she was maintained by him, rather than he by her. Besides, it would seem to be inconsistent to hold that a minor son, who is himself the head of a

family, may legally be so under the care and maintenance of his mother as thereby to make her the head of a family, as contemplated by our homestead statutes.

We think the judgment should be affirmed. It is so ordered.

HOLCOMB, C. J., TOLMAN, MOUNT, and FULLERTON, JJ., concur.